## SALT LAKE CITY v. HOLLISTER.

WHERE A MUNICIPAL CORPORATION BY ITS OFFICERS AND AGENTS ENGAGES AS A DISTILLER in the distillation of spirits, sells the same without paying the gallon tax thereon, receives the benefits of such business, and appropriates the proceeds thereof to its public treasury, it is liable to the United States for the amount of the gallon tax on all spirits so distilled and sold, although all of such acts are unauthorized by its charter; money paid to a revenue officer upon the assessment of such tax, although paid under protest, can not be recovered back.

APPEAL from the third district court. The opinion states the facts.

*Sheeks & Rawlins,* for the appellant.

A municipal corporation, although regarded as a legal, is not a physical, entity, and is incapable of acting, except within its corporate powers and by its authorized officers or agents. Therefore, the averment that a city has done a certain act involves the assertion of two things: 1. That it had the power under its charter to do it; and 2. That it has exercised that power. Unless the former be true, the latter is impossible.

The charter of the city is a public law of which all persons are bound to take notice: Comp. L. 708, charter, sec. 83; 1 Dillon's Mun. Corp., sec. 83, note 4; 1 Whart. Ev., secs. 287, 293; Cooley's Const. Lim. 237.

A coporation possesses no power not expressly granted or necessary to carry its granted powers into effect: 1 Dillon's

Mun. Corp., secs. 89, 91, notes; Cooley's Const. Lim. 235; 19 Alb. L. J. 455.

The business of distilling spirits is foreign to the objects of the corporation, and outside of the scope of its corporate powers.

Taxing statutes are to be strictly construed in favor of the citizen; Cooley on Taxation, 200 et seq.; and a delinquent tax upon spirits removed without having been deposited in the bonded warehouse can be assessed by the commissioner only upon the distiller: R. S., p. 630, sec. 3253. This the city could not be.

It was not only essential to the validity of this assessment against the city that it was the distiller of the spirits, but also that it removed the spirits without depositing them in the bonded warehouse.

The latter it not only had no power to do under its charter, but by law was expressly prohibited from doing under the severest penal consequences: R. S., p. 641, sec. 3296; namely, double the tax imposed, a fine of not less than two hundred dollars nor more than five thousand dollars, and imprisonment which may be three years. If in this case the city is liable to the tax, it has incurred these penalties, and the present inhabitants, which constitute the city, differing largely from its population of fifteen years ago, must endure the burden of the tax, fines, and imprisonment, although in no degree responsible for the acts out of which they are claimed to arise.

. It ought to require no argument that the charter of the city shields its inhabitants from any such consequences. Some persons, wholly without authority, assumed to set up and operate a distillery in behalf of the city; without authority, they take the money from the city treasury and misappropriate it for this purpose; without authority, they distill spirits, and falsely report the city as the distiller. The revenue officers of the United States, knowing that the city was not and could not be the distiller, because they are bound to know the law, pass the responsible parties and tax the city.

The persons, the real distillers, without any authority, again take the city's money to pay the illegal tax; without autho-

rity, they sell spirits and turn the "proceeds" or "benefits," as the case may be, into the city treasury. What proportion these "benefits" bore to the misappropriations is purely a matter of conjecture.

Counsel below seemed to drive some comfort from the proposition that he whose money is paid to and appropriated by a city without consideration might recover it in an action of implied *assumpsit*. This may be well enough in the abstract, but here counsel did not have facts sufficient to put such a case on the record. It does not appear that the amount exacted was ever paid to the city; nor is there any pretense that the money paid to the city belonged to the government; nor was the tax money exacted under any such claim, nor did the procedure accord with it.

Where there has been an irregular or informal exercise of a power conferred upon a municipal corporation, it may be precluded, under some circumstances, from questioning its liability; but that it can not in any event incur any liability by estoppel, ratification, or otherwise, in respect to an act or matter strictly *ultra vires*, or wholly outside its corporate powers, is a proposition firmly established and universally recognized by the authorities: 1 Dillon's Mun. Corp., 3d ed., secs. 89, 457, 458; 2 Id., secs. 935, 936, 968, 972; Angell & Ames on Corp., sec. 256; Cooley on Torts, 120; *Thomas* v. *City of Richmond*, 12 Wall. 349, 356, 357; *The Mayor* v. *Ray*, 19 Id. 468, 478; *Township of East Oakland* v. *Skinner*, 94 U. S. 255, 258; *Thomas* v. *R. R. Co.*, 101 Id. 71, 83; *Scoville* v. *Thayer* (U. S. Sup. Ct., Mar. 13, 1882), 25 Alb. L. J. 310, 312; *Webster* v. *Buffalo Ins. Co.* (dec. by Justice Miller), 7 Fed. Rep. 394; *Ashbury Railway Carriage & Iron Co.* v. *Richie*, 14 Eng. Rep. 42; *Mayor etc. of Albany* v. *Cunliff*, 2 N. Y. 165, 177; *Brown* v. *Mayor*, 63 Id. 239, 242.

*P. T. Van Zile*, for the respondent.

No brief on file.

TWISS, J.:

The complaint alleges that the plaintiff is a municipality, incorporated by a public act of the territorial legislature in 1850, and since then has continuously existed as such.

The defendant is the United States collector of internal revenue for the district of Utah territory.  That in June, 1876, the United States commissioner of internal revenue erroneously set down and assessed against the plaintiff a special tax of ten thousand seven hundred and sixty dollars upon spirits alleged to have been distilled by the plaintiff between the second day of March, A. D. 1867, and the twenty-sixth day of August, 1878, and not deposited in bonded warehouse of the United States as required by law.  That said tax list was placed in the hands of the defendant for collection, who demanded of the plaintiff the payment of said tax, and threatened that unless the same was paid he would seize upon and sell at public auction sufficient of the property of the plaintiff to pay said special tax, with interest and penalty.  That on the fourteenth day of August, 1877, while the defendant so threatened and was about to seize upon and sell the property as aforesaid, the plaintiff, protesting against payment of said tax or claim of defendant, notified the defendant that suit would be brought against him to recover the same, and that the plaintiff might not be dispossessed of its property by the defendant, paid to the defendant the amount of said tax claimed by him, amounting with interest thereon to twelve thousand and fifty-one dollars and seventy-five cents.  That the plaintiff appealed to the commissioner of internal revenue, praying that the tax be abated, and that the sum so paid to defendant by plaintiff be refunded.  That the commissioner has failed to render any decision on the appeal and prayer of the plaintiff, or to cause said sum of money or any part thereof to be refunded or restored to the plaintiff, and prays judgment for the amount so paid to the defendant, with interest thereon.

The answer admits the municipal character of the plaintiff, the setting down and assessing a tax against the plaintiff upon spirits distilled by the plaintiff during the time, and not deposited in bonded warehouse of the United States, as alleged and set forth in the complaint, and alleges that a list containing the said gallon tax assessed by the commissioner of internal revenue of the United States was placed in the hands of the defendant for collection, and avers that it thereby became and was his duty to collect the same; denies that the tax was illegally or erroneously set down or assessed

against the plaintiff by the commissioner; and avers, that the plaintiff during all the time between March 2, 1867, and the twenty-sixth day of August, 1878, was actually engaged in distilling, producing, and dealing in, as a distiller, the spirits so assessed as aforesaid, and received and appropriated the benefit arising therefrom. That the assessment of the gallon tax was made upon distilled spirits actually produced and distilled by the plaintiff, and upon which there had not been paid the gallon tax required by law, said spirits not having been deposited in a bonded warehouse of the United States by plaintiff as required by law, but taken from said distillery by the plaintiff and sold, and the proceeds thereof put into its treasury.

The defendant, further answering, says: "That the plaintiff during the time mentioned in plaintiff's complaint regularly reported and paid to the collector of internal revenue of the United States the gallon tax due upon a quantity of spirits distilled and produced by plaintiff, but neglected to report all of the spirits it actually produced and distilled, and for and upon which the said gallon tax was due and owing to the United States, and that the tax so assessed as aforesaid is the tax upon the spirits produced and distilled in excess of the amount so reported by plaintiff, and upon which no tax was ever assessed or collected to the time of the payment mentioned in plaintiff's complaint and defendant's answer." Admits that defendant did threaten to seize and sell the property of plaintiff to pay said tax, and that the plaintiff paid the defendant the amount of said tax with interest; but avers that he has no knowledge, information, or belief for what reason plaintiff paid the same.

To this answer the plaintiff demurred, alleging, as ground of demurrer, "that said answer does not state facts sufficient to constitute a defense to said action." The demurrer was overruled by the district court, and the plaintiff electing to stand upon the demurrer, judgment was rendered for the defendant, from which judgment the plaintiff appealed to this court.

Counsel for plaintiff claim that a municipal corporation is incapable of acting except within its corporate powers and by its authorized agents or officers. Therefore the averment that a

city has done a certain act involves the assertion of two things: 1. That it had the power under its charter to do it; and 2. That it has exercised such power. Unless the former of these be true, the latter is impossible. That the business of distilling or manufacturing spirits has ever been wholly foreign to objects of the plaintiff corporation, and entirely outside of the scope of its corporate powers as defined in its charter. That taking money from the city treasury, and with it setting up and operating a distillery in behalf of the city; falsely reporting the city as a distiller; taking the money of the city to pay the illegal tax upon distilled spirits; selling spirits thus distilled, and paying the money received therefrom into the city treasury—are all acts of persons without authority; and the money used for the purpose of distilling spirits is a misappropriation of the city funds. That the charter of the city shields its inhabitants from the consequences of such acts.

As a general rule, it may be said that a municipal corporation can not by its agents, officers, or city council bind itself by any contract outside of the scope of its powers, or entirely foreign to the purposes of the corporation; that unauthorized contracts are void; and in actions thereon the corporation may successfully interpose the plea of *ultra vires:* Dillon's Mun. Corp., 3d ed., sec. 457.

The pleadings in this case show neither a contract between the plaintiff and the defendant nor between the city and any party under whom the defendant claims. But they do allege that from March 2, 1867, to August 26, 1878, the city was engaged in the business of distilling spirits; that for a part of the spirits thus distilled she made regular reports to and paid to the collector of internal revenue the gallon duties or tax due thereon; that the balance were not reported, nor deposited in bonded warehouse of the United States, nor the duties or taxes thereon paid; that in the month of August, 1878, there was due to the United States the sum of twelve thousand and fifty-seven dollars and seventy-five cents, as the unpaid duties and taxes, and interest thereon, upon the spirits so distilled and not deposited in bonded warehouse of the United States; the proceeds of the sales of which had been paid into the city treasury and appropriated by the city; and for the

taxes upon that part of the spirits upon which no taxes had been paid, the defendant was about to distrain the goods of the plaintiff, when it paid the amount of duties or taxes claimed; for the return and recovery of which from the defendant this action is brought.   There is no claim or pretense that all the acts pertaining to the production or distillation of the spirits, the sale or disposal of the same without depositing them in bonded warehouse, paying the proceeds of the sales thereof into the city treasury, and all business relating in any way to the same, were not done or directed by the agents, officers, servants, or employees of the city, with her funds, and in her name and interest.

Upon the admissions made by the demurrer, the questions before us are : 1. Was the city liable to the United States for the amount of the duties upon the spirits thus produced with her funds, by her officers and legally constituted agents, acting for and in her name, and by them sold and disposed of without paying the duties thereon, and the proceeds thereby paid to, received, and appropriated by the city—although all of such acts were unauthorized by her charter, and a part of them in violation of acts of congress ?   2. Can she recover the money or any part thereof paid by her to the defendant, under the protest and circumstances set forth in the complaint and answer ?

Legal principles other than *ultra vires* of the plaintiff corporation are involved, and form an important element in this action.   When these spirits came into existence, the law created a lien upon them, which attached and became an incumbrance thereon; and the United States had an interest in them to the extent of the lien, which was a valid existing legal claim: 13 U. S. Stat. 243, 472; Burroughs on Taxation, 620.

It was the duty of the assessor or his assistant, upon obtaining knowledge that the duties upon these spirits had not been paid, and that they had been removed from the place where they were distilled, and not deposited in bonded warehouse, to assess a gallon tax against the distiller thereof, equal in amount to the duties and lien attaching thereto at time of distillation, and certify the same to the collector, who was required immediately to demand payment of such tax,

and upon refusal or neglect of payment by the distiller, to collect the same by distraint: 14 U. S. Stat. 480, 481.

The sale and transfer of these spirits, so long before knowledge thereof was had by the assessor or his assistant, makes it morally certain that they were beyond the recognition or discovery of the revenue officers, and therefore the lien upon them became (if they could be presumed to be in existence) inoperative and of no effect as a means of revenue.

By receiving the proceeds of the sales of these spirits into her treasury, the city became possessed of a large sum of money—the amount of the lien which was justly due to the United States, and to which she had no legal or moral right; and money so received and appropriated by a municipal corporation is subject to the demand of its legal or equitable owner by suit to recover it, to the same extent as if held by a private corporation, or natural person. This liability arises not from any contract entered into or express promise made by the city; but from the general obligation to do justice, which is equally upon all persons, whether natural or artificial, for the fulfilling of which the law implies a promise, which may be enforced by suit at law. The fact that the provisions of the city charter do not authorize the acts by means of which she received the money does not enable her to successfully plead *ultra vires,* nor to withhold from the United States the fruits of these unauthorized and in part fraudulent transactions: *East St. Louis* v. *East St. Louis Gas Light and Coke Company,* 98 Ill. 415 ; *Grogan* v. *San Francisco,* 18 Cal. 590 ; *Argenti* v. *San Francisco,* 16 Id. 255 ; *Thomas* v. *Port Huron,* 27 Mich. 233, opinion of Cooley, J.; *Louisiana* v. *Wood,* 102 U. S. 294 ; *United States* v. *State Bank,* 96 Id. 30.

The liability of the city as a distiller is a question we need not necessarily discuss, as the foregoing reasons and authorities are in our opinion conclusive. But it may not be inappropriate to add, that the power of taxation is a part of the government, incident to and coextensive with its sovereignty; and every kind of property is subject to this power: Cooley on Taxation, 1, 2, 4. Because these distilled spirits were produced by means not authorized by law, they were none the less property, subject to the duties and lien imposed

by acts of congress. Although they were certainly not property of a municipal character, necessary for conducting the public affairs of the municipality, yet if they belonged to the city, they were, so to speak, private property—owned by the city in a commercial sense, for the sole purpose of gain or profit; and it is by no means clear that the city was not liable to the tax set down and assessed against her, when it was discovered that the original duties were withheld, and the spirit removed from the place of distillation to a place other than bonded warehouse of the United States: *United States* v. *Railroad Company,* 17 Wall. 322, 332, 333.

If upon refusing to pay the original duties and lien, and the removal of the spirits from the place of distillation to a place other than bonded warehouse, the city did not become liable for the amount of the gallon tax when assessed, she was and did become so from the time the proceeds thereof were received and appropriated by her.

We are all therefore of the opinion that the payment into the city treasury, and the subsequent appropriation of the money that was due to the United States as duties upon these distilled spirits, upon which the United States had a lien, was a wrongful act as against the United States, and the appropriation by the city of such money was a wrongful use thereof; and that the amount having been paid by her to the defendant, although under protest, can not be recovered back in this action. The judgment of the district court is affirmed.

HUNTER, C. J., and EMERSON, J., concurred.